UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THE HURD FAMILY PARTNERSHIP, L.P.,     Plaintiff,

v.     Civil Action No. 3:13-cv-485-DJH-CHL

THE FARMERS BANK, et al.,     Defendants.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendant Farmers Bank filed two motions for summary judgment, (Docket No. 59; D.N. 60) and the Court granted both motions. (D.N. 84) Plaintiff Hurd Family Partnership now moves the Court to alter or vacate its judgment pursuant to Rule 59(e). (D.N. 87) Because the plaintiff makes arguments that should have been raised earlier without alleging any errors of law or fact, presenting new evidence, introducing an intervening change in controlling law, or arguing that there will be manifest injustice, the Court will deny the plaintiff's motion to alter or vacate the Order.

Additionally, because of the death of Defendant William Bennett Collett, Sr., the Partnership has filed an unopposed motion to substitute Defendant William Collett, Jr. in the place of his father. (D.N. 90) The Court will grant this motion.

**I.    BACKGROUND**

Many of the facts are undisputed, and remain unchanged from the Court's Memorandum and Opinion issued on March 10, 2016. (D.N. 84) Therefore, the facts will not be repeated here, except for what is necessary for resolution of the instant motion. Plaintiff Hurd Family Partnership was a minority owner of Freedom Holding. (D.N. 59-1, PageID # 341) Defendants W. Bennett Collett, Sr. and W. Bennett Collett, Jr. owned the remainder of Freedom Holding's

1

stock. (*Id.*) In early 2008, the Colletts asked King Southern Bank for a loan to be used to exercise stock options in Freedom Holding's subsidiary. (*Id.*, PageID # 343) After negotiating with the Colletts, King Southern agreed to loan $1.3 million to Freedom Holding. (*Id.*) In February or March 2008, Jim King, president of King Southern, contacted Farmers to gauge its interest in buying the $1.3 million loan to Freedom Holding. (*Id.*) King was worried about a conflict of interest because, in addition to being the president of King Southern Bank, he also provided accounting services to Freedom Holding and its subsidiary as a Certified Public Accountant. (*Id.*) Instead of buying the loan outright, however, King Southern and Farmers agreed to the terms of a loan participation agreement: Farmers provided $650,000 of the loan and its sister bank, Leitchfield Deposit Bank, provided the other $650,000. (*Id.*, PageID # 345)

In March 2010, Jim King essentially asked Farmers to buy out the participation agreement with King Southern and make a new loan in the same principal amount directly to Freedom Holding. (*Id.*, PageID # 349) Farmers agreed and completed a transaction in March 2010 that resulted in it becoming the lending bank from that point forward. (*Id.*) The loan became delinquent in February 2013, and the Partnership eventually filed the instant action claiming that Farmers had a duty to determine that the loans were properly used for Freedom Holding's corporate purposes. (*Id.*, PageID # 350) It further alleged that the Freedom Holding's board of directors failed to approve the loan properly, and that King Southern and Farmers were aware of the ultra vires purpose behind the loan. (*Id.*)

Farmers filed two motions for summary judgment. The first motion requested judgment against the Partnership on its claims that Farmers improperly loaned money to Freedom Holding in 2008. (Docket No. 59) The second motion requested judgment on Farmers' cross-claims against two of Farmers' co-defendants, W. Bennett Collett, Sr. and Freedom Holding. (D.N. 60)

Collett, Sr. and Freedom Holding admitted that Farmers Bank was entitled to summary judgment and did not "dispute the amount sought." (D.N. 63, PageID # 553)

The Court granted both motions for summary judgment. (D.N. 84) The Court found that "Farmers was just a participant in the original loan," and thus did not owe any duty to the Partnership. (*Id.*, PageID # 618) Specifically, the Court held that the participation agreement at issue met the Sixth Circuit's four-factor *AutoStyle* definition of a "true" participation agreement. (*Id.*, PageID # 620) Therefore, "there was no relationship between Farmers and Freedom Holding," and Farmers did not owe Freedom Holding or the Partnership any duty. (*Id.*, PageID # 622) The Court found that it was irrelevant that Farmers ultimately bought out its participation agreement in 2010 because "by then, the harms the Partnership complain[ed] of had already been done." (*Id.*) Finally, the Court rejected the plaintiff's argument that Farmers was liable under Kentucky's ultra vires statute. (*Id.*, PageID # 622–23) The Court held that it would be inequitable to apply this statute because "Farmers was not responsible for the underwriting on this loan; at the outset, it merely participated in the loan." (*Id.*, PageID # 623)

In response to the Court's Memorandum Opinion and Order, the Hurd Family Partnership now moves the Court to alter or vacate its judgment pursuant to Rule 59(e). (D.N. 87) The Partnership argues that the judgment should be altered or vacated because (1) the Partnership should be considered a third-party beneficiary of the participation agreement, (2) Farmers did not simply buy out King Southern, they "ratified" the agreement, and thus were put "in the shoes of [King Southern] as of the date of the original loan," (3) the agreement does not meet the *AutoStyle* definition of a "true" participation agreement, and (4) the loan "fell within the doctrine of *ultra vires*" because "it was actually a loan for the benefit of the Colletts and others not even owners of Freedom Holding." (*See id.*)

3

Farmers responds that the Partnership has not established grounds for altering or vacating the judgment pursuant to Rule 59(e) because its first three arguments are new arguments that were previously unraised, and the fourth argument is "a rehashing of an old argument." (D.N. 88, PageID # 645) Furthermore, Farmers contends that each argument fails as a matter of law. (*See* D.N. 88)

The Partnership has also filed an unopposed motion to substitute Defendant William Bennett Collett, Jr. in the place of Defendant William Bennett Collett, Sr. due to the death of the elder Collett. (Docket No. 90)

## II.     DISCUSSION

### A. Motion to Alter or Vacate Judgment

Under Rule 59(e) "the court may grant a motion to alter or amend 'if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice.'" *Boling v. Prospect Funding Holdings, LLC*, No. 1:14-CV-00081-GNS-HBB, 2016 WL 1611383, at *2 (W.D. Ky. Apr. 21, 2016) (citing *GenCorp v. Am. Int'l*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted)). "The moving party bears '[t]he burden of demonstrating the existence of a manifest error of fact or law.'" *Id*. at *2 (citing *Doe v. Patton*, 381 F. Supp. 2d 595, 605 (E.D. Ky. 2005), *aff'd sub nom. Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962 (6th Cir. 2006)). Notably, "the rule does not afford 'defeated litigants a second chance to convince the court to rule in his or her favor by presenting new explanation, new legal theories, or proof.'" *Ohio Midland, Inc. v. Proctor*, No. 2:05-CV-1097, 2012 WL 580407, at *1 (S.D. Ohio Feb. 22, 2012) (citing *Burnley v. Bosch Ams. Corp.,* 75 F. App'x 329, 333 (6th Cir. 2003)); *see also Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) ("A motion under Rule 59(e) does not simply provide an opportunity to reargue a case."); *Ky. Petrol.*

*Operating Ltd. v. Golden*, No. CIV. 12-164-ART, 2015 WL 2153344, at *3 (E.D. Ky. May 7, 2015) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)) ("A Rule 59 motion is not the place 'to raise arguments which could, and should, have been made before judgment issued.'").

The Partnership first contends that it should be considered a third-party beneficiary of the participation agreement. (D.N. 87-1, PageID # 629–31) The Partnership argues that Farmers provided the loan funds "to expressly benefit Freedom Holding, knowing that [King Southern] needed to get out of the loan." (*Id.*, PageID # 630–31) If it is a third-party beneficiary of the participation agreement, then the Partnership contends that "the promises made by Farmers to [King Southern,] which the Memorandum concluded gave rights only to [King Southern], in effect conferred rights on the Partnership, making summary judgment inappropriate." (*Id.*, PageID # 631) This motion is the first time the plaintiff has raised this argument in the course of this litigation; however, because this litigation has centered on interpretation of this participation agreement, this argument could have, and should have, been raised before the judgment issued. *See Golden*, 2015 WL 2153344, at *3 (citing *Engler,* 146 F.3d at 374). In making this argument, the Partnership does not allege any mistake of law or fact, does not provide any new evidence or intervening change in controlling law, and does not argue that manifest justice would be prevented. *See Boling*, 2016 WL 1611383, at *2.

Nevertheless, the Court rejects the contention that the Partnership should be considered a third-party beneficiary to the participation agreement. There is a "longstanding rule in Kentucky that for a stranger to recover under a contract to which he is not a party, 'it is indispensably essential that he allege and prove that the contract was intended for his benefit in the sense that it embraces the claim asserted by him.'" *United States v. Allstate Ins. Co.*, 754 F.2d 662, 664–65

5

(6th Cir. 1985) (citing *Louisville & Nashville R.R. Co. v. Dry Branch Coal Co.,* 252 Ky. 124, 65 S.W.2d 1008, 1011 (1933)). In other words, "Kentucky courts have consistently held that for a person to qualify as a third-party beneficiary, the contract in question must have been made and entered into directly or primarily for the benefit of such third person." *Pruitt v. Genie Indus., Inc.*, No. CIV.A. 3: 10-81-DCR, 2013 WL 139701, at *2 (E.D. Ky. Jan. 10, 2013) (internal quotation marks omitted) (citing *King v. Nat'l Indus., Inc.,* 512 F.2d 29, 32 (6th Cir. 1975)). "Intent to benefit is determined primarily by looking at the 'purpose of the promisee in light of the terms of the promise and the accompanying circumstances.'" *Allstate Ins. Co*., 754 F.2d at 664–65.

> In its motion, the Partnership contends that
>
> By providing all of the loan funds, Farmers and it[s] affiliate, provided the money to expressly benefit Freedom Holding, knowing that [King Southern] needed to get out of the loan due to Mr. King's conflict and that Freedom Holding needed the money on an expedited basis (the stock options were about to expire).

(D.N. 87-1, PageID # 630–31) The Partnership then argues that it should be considered a third-party beneficiary because it was "a shareholder of the party to whom the money was loaned, Freedom Holding." (*Id*., PageID # 631) The Partnership cites no direct authority in which this argument has been applied in the context of loan participation agreements to a party situated as the Partnership is here.

Applying the doctrine of third-party beneficiaries in this context would be inconsistent with Sixth Circuit authority regarding the function of participation agreements. The Sixth Circuit has explained that because participation agreements are not loans, "the participant's only contractual relationship is with the lender; [and] the participant has no ability to seek legal recourse against the borrower." *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 736 (6th Cir. 2001) (cting W. Crews Lott *et al., Structuring Multiple Lender Transactions,* 112 Banking L.J. 734,

736 (1995); Patrick J. Ledwidge, *Loan Participations Among Commercial Banks,* 51 Tenn. L.Rev. 519, 528 (1984)). "By entering into participation agreements, then, the lender obtains the benefit of being able 'to make a loan which is greater than its lending authority.' The participant, on the other hand, 'obtains the benefits of the lender's security interest and priority of payment.'" *Id.* (emphasis omitted) (citing *Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F. Supp. 401, 408 (S.D.N.Y. 1994); *First Bank of WaKeeney v. Peoples State Bank,* 758 P.2d 236, 238 (Kan. Ct. App. 1988)).

Here, the participation agreement was a contract between King Southern, as lender, and Farmers, as participant. (*See* D.N. 61-8) The agreement allowed King Southern to participate in a loan that it otherwise may not have been able to, which is the primary purpose of such a loan participation agreement according to the Sixth Circuit. *See id.* (citing W. Crews Lott *et al., Structuring Multiple Lender Transactions,* 112 Banking L.J. 734, 736 (1995); Patrick J. Ledwidge, *Loan Participations Among Commercial Banks,* 51 Tenn. L.Rev. 519, 528 (1984)). The agreement did not create any contractual relationship between Farmers and Freedom Holding or any of Freedom Holding's shareholders. *See id.* Therefore, because the primary purpose of the participation agreement was not to benefit Freedom Holding or the Partnership, the Partnership is not a third-party beneficiary to the participation agreement. *See Allstate Ins. Co.*, 754 F.2d at 664–65; *Pruitt*, 2013 WL 139701, at *2.

The Partnership next disputes the Court's conclusion that Farmers "bought out" its participation agreement. (D.N. 87-1, PageID # 631–35) The Partnership argues that because Farmers "actually provided the money . . . to fund the original loan to Freedom Holding," the "buy out" was, in fact, a "ratification of the events which took place in 2008 and put Farmers in the shoes of [King Southern] as of the date of the original loan." (*Id.*, PageID # 631–32)

7

Therefore, Farmers "approved the acts of [King Southern] in the original loan," making summary judgment inappropriate. (*Id*., PageID # 633)

The Partnership's contention contradicts the Court's March 10, 2016 Memorandum Opinion and Order, which found that Farmers did not owe Freedom Holding or the Partnership any duty because, by the time Farmers bought out the participation agreement in 2010, "the harms the Partnership complains of had already been done." (D.N. 84, PageID # 622) While the plaintiff may disagree with the Court's conclusion, as with the first argument, the Partnership has not alleged that the Court made a clear error of law or fact, provided any new evidence, presented an intervening change in controlling law, or argued that granting the motion would prevent manifest injustice. *Whitehead*, 301 F. App'x at 489. Instead, they are attempting to reargue the case by raising an argument that could, and should, have been raised earlier. *See Golden*, 2015 WL 2153344, at *3 (citing *Engler,* 146 F.3d at 374).

Nevertheless, the Partnership's argument is unavailing. The Kentucky Supreme Court has explained that for ratification to be effective, "'there must be an intention to ratify, although the intention may be inferred from the facts and circumstances. As a consequence, ratification cannot be inferred from acts which may be readily explained without involving any intent to ratify.'" *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 874 (Ky. 2016) (quoting *Wolford v. Scott Nickels Bus Co.*, 257 S.W.2d 594, 596 (Ky. 1953)).

The Partnership argues that Farmers' claim that it was ignorant and relied on King Southern's due diligence "does not absolve it from liability." (D.N. 87-1, PageID # 634) The Partnership provides:

> [W]here ignorance of the facts arises from the principal's own failure to investigate and the circumstances are such as to put a reasonable person upon inquiry, the principal may be held to have ratified despite lack of full knowledge. Thus, the general rule, that in order for ratification to bind the principal he or she

8

> must have been shown to have had full knowledge of the material facts relating to the unauthorized transaction, does not apply if the principal intentionally assumed the responsibility without inquiring, or deliberately ratified, having all the knowledge with respect to the act which he or she cared to have.

(*Id*. (citing Papa *John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 53 (Ky. 2008)) However, like the plaintiff in *McCoy*, the Partnership "fail[ed] to cite the rest of the rule, which continues as follows: 'Even then, however, for this exception to apply, the principal must have had actual knowledge of the facts relied upon to put him or her on inquiry.'" (D.N. 88, PageID # 648) *McCoy*, 244 S.W.3d at 53 (citing 3 Am.Jur.2d *Agency* § 185 (2007); Restatement (Third) Of Agency § 4.06 (2006)).

As Farmers points out, there is nothing in the record that would indicate "that Farmers had any knowledge of any improper conduct or breach of fiduciary duty on the part of King Southern." (D.N. 88, PageID # 649) Additionally, Farmers did not underwrite the loan, was not required to conduct the same level of due diligence as King Southern, and had no fiduciary duty to the Partnership to do so. (D.N. 84; PageID # 623) Simply entering into the participation agreement and buyout agreement with King Southern does not indicate that Farmers intended to ratify "the events which took place in 2008." (D.N. 87-1, PageID # 631–32) As explained earlier, Farmers entered into these agreements to help King Southern participate in a loan that it otherwise may not have been able to, and in doing so obtained the benefit of King Southern's "security interest and priority of payment." *AutoStyle*, 269 F.3d at 736. Therefore, Farmers' acts do not demonstrate an intention to ratify the acts of King Southern in making the original loan. *See Saint Joseph Healthcare, Inc.*, 487 S.W.3d at 874.

Next, the plaintiff challenges the Court's finding that the agreement in question was a "true" participation agreement under the Sixth Circuit's *AutoStyle* test. (D.N. 87-1, PageID # 636–37) In *AutoStyle*, the Sixth Circuit established the following four-part test for determining

9

"true" participation agreements: "(1) money is advanced by a participant to a lead lender; (2) the participant's right to repayment only arises when the lead lender is paid; (3) only the lead lender can seek legal recourse against the borrower; and (4) the document is evidence of the parties' true intentions." *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 736–37 (6th Cir. 2001). The plaintiff argues that the fourth factor was not met because the agreement was a boilerplate form that "did not discuss the fact that [King Southern] had a conflict of interest and needed to exit the loan," and thus does not reflect the parties' true intentions. (D.N. 87-1, PageID # 636–37) The Court previously found that this participation agreement satisfied the *AutoStyle* four-part test, and will not repeat its reasoning here. (*See* D.N. 84, PageID # 619–20) Furthermore, the Court does not find it necessary to revisit its conclusion because the plaintiff has not alleged any clear error of law or fact, presented new evidence, introduced an intervening change in controlling law, or argued that granting the motion will prevent manfiest injustice. Instead, the Partnership is again raising an argument that should have been raised earlier. *See Golden*, 2015 WL 2153344, at *3 (citing *Engler,* 146 F.3d at 374).

Finally, the Partnership argues that Farmers authorized an *ultra vires* loan when it accepted King Southern's investigation despite knowing that King Southern had a conflict of interest. (D.N. 87-1, PageID # 637) The plaintiff previously raised this argument and it was addressed in the Court's opinion granting summary judgment. (D.N. 84, PageID # 615, 621) The Court will not restate why this argument fails because the Partnership has not alleged that the Court made a clear error of law or fact in reaching its conclusion, nor has it provided any new evidence or introduced any other grounds that would lead the Court to reach a different conclusion. (*See* D.N. 87-1, PageID # 637–38)

Because the Partnership has not met its burden pursuant to Rule 59(e) of providing a basis for altering or vacating the judgment, the motion will be denied. The Partnership's motion does not allege a mistake of law or fact, present new evidence, introduce an intervening change in controlling law, or argue that manifest injustice will be prevented. Instead, the Partnership's arguments should have been made earlier or have already been made and will not be rehashed here. *See Golden*, 2015 WL 2153344, at *3.

### B. Motion to Substitute Party

The Partnership also filed an unopposed motion to substitute a party, seeking leave to substitute Defendant William Bennett Collett, Jr. in the place of Defendant William Bennett Collett, Sr. because of the death of the elder Collett. (D.N. 90) While Plaintiff cited Ky. Rev. St. § 395.278 as the basis for their motion, Fed. R. Civ. P. 25 governs the substitution of a party in this case. *See Boggs v. Blue Diamond Coal Co.*, 497 F. Supp. 1105, 1124 (E.D. Ky. 1980). Rule 25 provides that if a motion for substitution "is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25. However, because a motion for substitution "can be filed even if no suggestion of death has been filed," the Court will grant this motion. *United States v. Currency $11,331*, 482 F. Supp. 2d 873, 885–86 (E.D. Mich. 2007).

### III. CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The plaintiff's motion to alter judgment or vacate (D.N. 87) is **DENIED**.

(2) The plaintiff's motion to substitute a party (D.N. 90) is **GRANTED**.

12

(3) This matter is referred to Magistrate Judge Colin H. Lindsay to conduct a status conference.

December 19, 2016

**David J. Hale, Judge**
**United States District Court**